IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 306-016 |
| | ) | |
| BRONSON FLANDERS PHILLIPS | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

In the above-captioned criminal case, the government has accused Defendant of possession with intent to distribute cocaine base (crack cocaine) in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), (b)(1)(A). The matter is now before the Court on Defendant's motion to suppress all evidence seized as a result of the search of his person, vehicle, and home on May 17, 2005. (Doc. no. 17). The Court held an evidentiary hearing on April 19, 2007, and heard testimony from Sgt. Christopher Brewer of the Laurens County Sheriff's Department ("Sgt. Brewer"). Following the hearing, the parties filed supplemental briefs in support of their respective positions. (Doc. nos. 21, 23). For the reasons developed more fully herein, the Court **REPORTS** and **RECOMMENDS** that the motion to suppress be **DENIED**.

### I. FACTS

Sgt. Brewer testified that on May 17, 2005, he was conducting a drug investigation utilizing a confidential informant ("CI"). The CI informed Sgt. Brewer that he had arranged to purchase half of an ounce of cocaine from Jerry McMiller. Sgt. Brewer searched the CI,

equipped him with a transmitting device, and provided him an amount of drug unit funds from which the serial numbers were recorded. Sgt. Brewer then followed the CI to a pay phone, where the CI contacted Mr. McMiller to confirm that the transaction was going to occur. By utilizing the transmitting device, the CI informed Sgt. Brewer that Mr. McMiller requested that the CI come to his residence at Ridgewood Trailer Park ("RTP"), in Dublin, Georgia, to complete the transaction. Sgt. Brewer followed the CI in an unmarked vehicle to RTP and set up surveillance at a position where he could observe the only means of entrance and exit to RTP.

The CI arrived at RTP at approximately 5:38 p.m. and, through the transmitter, Sgt. Brewer heard Mr. McMiller direct the CI to another residence at RTP. Mr. McMiller exited the CI's vehicle, spoke with another individual, and then advised the CI that the cocaine had to be delivered by another person. An extended period of time passed before the cocaine arrived at RTP and the transaction occurred. During this time period, Sgt. Brewer observed several vehicles enter and exit RTP, including a black Chevy Camaro. Shortly after the Camaro entered RTP, Sgt. Brewer overheard a drug transaction occurring through the transmitter. The Camaro left RTP, with the CI directly behind him, at approximately 6:45 p.m.

Because an extended time period had passed after the CI's arrival at RTP, and due to the CI's failure to call out the specific cars involved in the drug transaction and audibly count the funds used to purchase the cocaine, Sgt. Brewer stopped the CI at a convenience store before the CI had a chance to reach the prearranged meeting location. After Sgt. Brewer chastised the CI, who had proven to be reliable on a dozen or more prior occasions,

for his uncharacteristically poor performance during the controlled buy, the CI informed Sgt. Brewer that the cocaine supplier for the transaction was a short, stocky, light-skinned black male. The CI also stated that the supplier was driving a black Chevy Camaro, which Sgt. Brewer recognized as the car that the officers had observed during their surveillance. The CI then produced what was later determined to be 7.59 grams of cocaine which he had purchased with $500.00 of drug unit funds.

In Sgt. Brewer's estimation, the cocaine purchase was "light"; however, when he attempted to weigh the drugs, his digital scales would not function because the batteries were dead. After searching the CI and finding no additional cocaine, Sgt. Brewer ordered the CI to stay at the prearranged meeting location while the officers traveled to a nearby Kmart store to purchase additional batteries. To reach the Kmart from the prearranged meeting location, the officers' route took them through the area surrounding RTP.

Shortly after he left the store, while traveling back to the meeting location, Sgt. Brewer observed the Camaro he had seen previously leaving the area surrounding RTP. Sgt. Brewer testified that, although he did not know the Camaro's license plate number, the Camaro was distinctive and easily identifiable because, although it was a 1998 model vehicle, the car was very clean, well-kept, and also had tinted windows. Sgt. Brewer radioed Dublin Police Officer Mark Bell, who was patrolling the area in a marked unit, and had him conduct a traffic stop of the vehicle. From his vantage point just behind Officer Bell, Sgt. Brewer immediately recognized Defendant, the driver, from past narcotics investigations and observed that he fit the description given by the CI.

Sgt. Brewer, and another officer who was accompanying Sgt. Brewer, exited their vehicle and approached the passenger-side of the Camaro, which was occupied by Bruce Gaines. Mr. Gaines consented to a search of his person, and the officers discovered a bag which contained a white powdery substance later determined to be cocaine. Following the discovery of the cocaine, Mr. Gaines was arrested. Defendant was also placed under arrest. A search of the Camaro was then conducted, which led to the discovery of an additional quantity of cocaine. A search of Defendant's person yielded bills which had serial numbers matching those provided to the CI to purchase the cocaine from Mr. McMiller.

After making these discoveries, Sgt. Brewer requested permission to search Defendant's home at 205 Lancelot Lane, Dublin, Georgia ("the residence"). When Defendant declined, Sgt. Brewer applied for, and obtained, a search warrant for the residence at approximately 8:45 p.m. (See doc. no. 18, pp. 7-9). Sgt. Brewer's affidavit and application for the search warrant recited the facts surrounding the traffic stop and the controlled purchase which led to the traffic stop. (Id. at 9). Sgt. Brewer's affidavit also recited that, based upon his past experience, drug traffickers frequently maintain records or other evidence of drug activity at their residence and that such evidence was likely present at Defendant's residence. (Id. at 8-9). The execution of the search warrant resulted in the seizure of approximately eighty (80) grams of cocaine, scales, packaging materials, and other evidence of drug activity.

## II. DISCUSSION

### A. The Stop and Search of the Camaro and the Search of Defendant's Person

#### 1. The Respective Burdens of the Parties

As a general matter, a defendant contending that a search violated his Fourth Amendment rights must demonstrate that the search was illegal and that he had a legitimate expectation of privacy in the property searched. Rawlings v. Kentucky, 448 U.S. 98, 104 (1980). Nevertheless, "[u]pon a motion to suppress evidence garnered through a *warrantless* search and seizure, the burden of proof as to the reasonableness of the search rests with the prosecution." United States v. Freire, 710 F.2d 1515, 1519 (11th Cir. 1983), *cert. denied*, 465 U.S. 1023 (1984); see also United States v. Waldrop, 404 F.3d 365, 368 (5th Cir. 2005) ("A defendant normally bears the burden of proving by a preponderance of the evidence that the challenged search or seizure was unconstitutional. However, where a police officer acts without a warrant, the government bears the burden of proving that the search was valid." (citation omitted)). Thus, "[t]he [g]overnment must demonstrate that the challenged action falls within one of the recognized exceptions to the warrant requirement, thereby rendering it reasonable within the meaning of the fourth amendment [sic]." Freire, 701 F.2d at 1519; see also United States v. de la Fuente, 548 F.2d 528, 533 (5th Cir. 1977). Accordingly, once Defendant demonstrates that the warrantless search of his person and the Camaro implicated his Fourth Amendment rights, which he has done here, the burden then shifts to the government to show that an exception to the warrant requirement applies.[1]

---

[1] Defendant clearly has a reasonable expectation of privacy in his person and his vehicle.

5

## 2. The Stop of the Camaro

Defendant first alleges that there was no justification for the stop of his vehicle. (Doc. no. 17, pp. 4-7). The government contends that the stop was justified based upon reasonable suspicion sufficient to support an investigative stop. (Doc. no. 18, p. 8). The government has the better argument.

Under Terry v. Ohio, 392 U.S. 1, 30 (1968), the police may briefly stop and detain persons in order to investigate a reasonable suspicion that those persons are involved in criminal activity, even in the absence of probable cause to believe that a crime has been committed. United States v. Tapia, 912 F.2d 1367, 1370 (11th Cir. 1990). Reasonable suspicion is determined from the totality of the circumstances, United States v. Sokolow, 490 U.S. 1, 8 (1989), and requires that the officer point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the investigative stop. Terry, 392 U.S. at 21; see also United States v. Pruitt, 174 F.3d 1215, 1219 (11th Cir. 1999). Although the "reasonable suspicion" required for a Terry stop is less stringent than the requirement for probable cause, United States v. Mikell, 102 F.3d 470, 475 (11th Cir. 1996), "reasonable suspicion" requires that an officer have more than a "hunch" that criminal conduct is afoot based on unparticularized facts. The officer must be able to articulate some minimal, objective justification for the investigatory detention. United States v. Acosta, 363 F.3d 1141, 1145 (11th Cir. 2004); United States v. Williams, 876 F.2d 1521, 1524 (11th Cir. 1989).

The reasonableness of an investigative stop turns on two inquiries: 1) whether the stop was reasonable at its inception, and 2) whether the stop became unreasonable in its

6

scope or duration. See Acosta, 363 F.3d at 1145; see also United States v. Purcell, 236 F.3d 1274, 1277 (11th Cir. 2001). Here, Sgt. Brewer utilized a CI to conduct a controlled purchase of cocaine. Through his surveillance of RTP during the controlled purchase, Sgt. Brewer observed an older-model, clean, well-kept black Chevy Camaro with tinted windows enter RTP and leave immediately in front of the CI. The CI informed Sgt. Brewer that the driver of the Camaro had been the supplier of the cocaine which he had purchased. Shortly thereafter, Sgt. Brewer observed the Camaro, which he was easily able to identify based upon its distinctive characteristics, traveling in the area surrounding RTP. Sgt. Brewer relayed a description of the Camaro to Officer Bell and requested that he stop the vehicle.[2] Based upon the foregoing, Sgt. Brewer had a reasonable and articulable suspicion to have Officer Bell initiate a Terry stop to investigate whether the driver of the Camaro was involved in drug activity.

Having determined that Sgt. Brewer had a reasonable suspicion to justify the stop, the Court must consider whether the officers diligently worked to confirm or dispel their suspicion of criminal activity involving drugs or whether they unreasonably prolonged the stop. After the vehicle was stopped, Sgt. Brewer immediately recognized the driver of the vehicle, Defendant, from past drug investigations and observed that he fit the description given by the CI as the person who sold him the drugs. Shortly thereafter, when questioned by Sgt. Brewer and another officer, the passenger, Mr. Gaines, consented to a search of his person. This search revealed a bag which contained cocaine residue. At this point, Sgt.

---

[2] A reasonable, articulable suspicion to justify a stop can be based on the "collective" knowledge of all the officers involved in the stop. Acosta, 363 F.3d at 1145.

Brewer placed Mr. Gaines under arrest and directed another officer arrest Defendant while he began a search of the Camaro. (Doc. no. 17, p. 15). Given that the courts have allowed Terry stops to last as long as seventy-five minutes, United States v. Gil, 204 F.3d 1347, 1350-51 (11th Cir. 2000) (*per curiam*), the Court is satisfied that the officers here diligently worked to confirm or dispel their suspicion of criminal activity involving drugs within minutes following the stop of the vehicle.

### 3. The Search of the Camaro

Defendant contends that, because he was not subject to a lawful arrest before the search of the Camaro began, the search of the vehicle incident to his unlawful arrest was similarly unlawful.[3] However, regardless of Defendant's contention that his arrest was unlawful, "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." New York v. Belton, 453 U.S. 454, 460 (1981). Additionally, the rule announced in "Belton governs even when an officer does not make contact until the person arrested has left the vehicle." Thornton v. United States, 541 U.S. 615, 617 (2004). In this case, Sgt. Brewer was permitted to conduct a search of the Camaro, in which Mr. Gaines was a passenger, incident to Mr. Gaines's lawful arrest. See United States v. Mangram, CR 205-032, 2005 WL 2886038, *4 (S.D. Ga. Oct. 28, 2005) (citing Belton, 453 U.S. at 460; Thornton, 541 U.S. at 619-20). As Mr. Gaines's arrest is unchallenged in these proceedings, the search of the vehicle performed incident to Mr.

---

[3]Defendant's argument that there was insufficient probable cause to support his arrest is considered below.

Gaines's arrest, which yielded an additional quantity of cocaine, was justified regardless of the sequence of the search with respect to Defendant's arrest. Accordingly, the evidence discovered in the Camaro should not be suppressed.

### 4. The Arrest and Search of Defendant

Defendant also contends that, because his arrest occurred before the cocaine was recovered from his vehicle, his arrest was not supported by probable cause and, as such, the fruits of the search incident to the unlawful arrest - specifically, the drug unit funds recovered from Defendant's wallet - should be suppressed. (Doc. no. 21, p. 2). The government contends that the officers had probable cause to arrest Defendant prior to the discovery of the cocaine in his vehicle, and that the officer's subsequent search of Defendant incident to his arrest was proper. See United States v. Robinson, 414 U.S. 218, 224 (1973).

Probable cause to arrest a suspect requires a greater certainty of criminal behavior than reasonable suspicion, but probable cause "does not require the same standard of conclusiveness and probability as the facts necessary to support a conviction." United States v. Dunn, 345 F.3d 1285, 1290 (11th Cir. 2003) (quoting Wood v. Kesler, 323 F.3d 872, 873 (11th Cir. 2003)). Specifically, "[p]robable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." United States v. Gordon, 231 F.3d 750, 758 (11th Cir. 2000) (quoting United States v. Gonzalez, 969 F.2d 999, 1002 (11th Cir. 1992)).

In this instance, the CI had informed Sgt. Brewer that a person matching Defendant's description and driving a black Camaro was the supplier of the cocaine which was purchased

9

earlier that afternoon. The CI's recitation of the facts surrounding the controlled purchase were corroborated through Sgt. Brewer's surveillance of the controlled purchase. Also, once Defendant's vehicle was stopped, Sgt. Brewer recognized Defendant from prior drug investigations, and he matched the description given by the CI, further raising Sgt. Brewer's suspicion. Moreover, a bag containing cocaine was found on Mr. Gaines, a passenger in Defendant's vehicle. Based upon the totality of these facts, Sgt. Brewer had probable cause to believe that Defendant had recently, or was currently, engaged in criminal activity. See United States v. Goddard, 312 F.3d 1360, 1362-64 (11th Cir. 2002) (holding that officer had probable cause to arrest a suspect before conducting search based upon, *inter alia*, an informant's tip and the officer's past dealings with the defendant). Accordingly, Defendant's arrest was valid and the search incident to that arrest, which revealed drug unit funds which were used in the controlled purchase earlier that day and a bag of cocaine in Defendant's vehicle,[4] was justified.[5]

---

[4]As discussed above, the search of the Camaro was also justified based upon the arrest of a passenger in the vehicle, Mr. Gaines.

[5]Even assuming *arguendo* that there was not probable cause to arrest Defendant after the officers discovered the bag containing cocaine residue on Mr. Gaines, "[o]peration of the exclusionary rule when the police probably would have discovered the evidence through pursuit of a legal right they already possessed and were actively pursuing would place the [g]overnment in a worse position than before the illegal conduct occurred." United States v. Satterfield, 743 F.2d 827, 846 (1984). In this instance, the search of Defendant's vehicle, which yielded cocaine, was underway at the time of Defendant's arrest. Had Defendant merely been detained during the search of the vehicle, probable cause for arrest would clearly have been present a few minutes later following the discovery of the cocaine in the vehicle. A search incident to arrest in that scenario would have led to the discovery of the drug unit funds.

## B. The Search of the Residence Pursuant to the Search Warrant

Lastly, Defendant contends that there was insufficient probable cause to support the issuance of the search warrant for Defendant's residence, and that all evidence seized as a result of this illegal warrant should be suppressed.[6] (Doc. no. 17, p. 9). The government contends that the affidavit in support of the search warrant issued for Defendant's residence provided ample probable cause and that, regardless, the officers executing the warrant had a good faith belief in the validity of the warrant. (Doc. no. 18, p. 5). Based upon the following, the Court finds that the warrant was adequately supported by probable cause.

Whenever a search warrant application is presented to a judicial officer, the judicial officer must

> make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . , including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

Illinois v. Gates, 462 U.S. 213, 238 (1983). "[P]robable cause deals 'with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" United States v. Miller, 24 F.3d 1357, 1361 (11th Cir. 1994) (citing Gates, 462 U.S. at 241). Moreover, these probabilities need not come from direct observation but may be inferred from the particular circumstances at issue. United States v. Jenkins, 901 F.2d 1075, 1080 (11th Cir. 1990).

---

[6]Defendant's argument that the evidence seized during the execution of the search warrant, which was based in part upon evidence seized during the traffic stop, should be suppressed as "fruit of the poisonous tree" fails based upon the analysis set forth *supra* and need not be considered further.

11

Probable cause may be based on evidence that would not be legally competent in a criminal trial. Draper v. United States, 358 U.S. 307, 311 (1959). Furthermore, "probable cause is a fluid concept turning on the assessment of probabilities in particular factual contexts[.]" Gates, 462 U.S. at 232.

The Court is also guided by the principle that the affidavit supporting a search warrant is presumed valid. Franks v. Delaware, 438 U.S. 154, 171 (1978). Insignificant and immaterial omissions or misrepresentations will not invalidate a warrant. Jenkins, 901 F.2d at 1080. Stated another way, a search warrant can be invalidated under the Fourth Amendment when: (1) the warrant affidavit contains false statements made "knowingly and intentionally, or with reckless disregard for the truth," and (2) the false statements were "material," i.e., necessary to the finding of probable cause. Franks, 438 U.S. at 155-56; United States v. Haimowitz, 706 F.2d 1549, 1556 n.2 (11th Cir. 1983) (noting that Franks standard for evidentiary hearing also applicable to test validity of search warrant); see also United States v. Steiger, 318 F.3d 1039, 1046 (11th Cir. 2003) ("To justify suppression of evidence seized under a warrant, the alleged deliberate or reckless failure to include material information in the affidavit must conceal information that would defeat probable cause."). Common sense must be employed when reading the affidavit, United States v. Ventresca, 380 U.S. 102, 108 (1965), and a court reviewing the decision of a judicial officer concerning the existence of probable cause gives "[g]reat deference" to that determination. United States v. Leon, 468 U.S. 897, 914 (1984); United States v. Gonzalez, 940 F.2d 1413, 1419 (11th Cir. 1991).

In this instance, as set forth above, Sgt. Brewer's affidavit and application for the search warrant summarized the events surrounding the traffic stop which had occurred earlier that day, including the fact that cocaine was recovered from Defendant's vehicle and from a passenger in the vehicle, Mr. Gaines. (Doc. no. 18, p. 9). The affidavit also recited the information provided by the CI, and corroborated by Sgt. Brewer's surveillance, that Defendant's vehicle delivered the cocaine involved in the controlled purchase which occurred earlier that afternoon. (Id.). Moreover, the affidavit states that during the traffic stop money used to purchase the cocaine during the controlled purchase was recovered from Defendant's person. (Id.). Additionally, the affidavit states that Sgt. Brewer was familiar with Defendant's reputation as a supplier of cocaine in Laurens County based upon previous drug investigations and that, based upon his past experience, drug traffickers frequently maintain records or other evidence of drug activity at their residence and that such evidence was likely present at Defendant's residence. (Id. at 8-9).

Based upon the facts established at the hearing through Sgt. Brewer's testimony, all of the information contained within the affidavit, as set forth above, represents an accurate recitation of the facts possessed by Sgt. Brewer at the time. However, Defendant takes issue with the portion of the affidavit which states: "Upon leaving the scene of the controlled purchase [Defendant's] vehicle was seen heading toward the Lancelot Drive residence and a short while later [Defendant's] vehicle was observed coming from the direction of the Lancelot [D]rive residence." (Id. at 9). In support of his argument, Defendant cites to the findings of the Superior Court of Laurens County in a civil forfeiture proceeding related to this action; these state court findings concluded that several turns would have been necessary

13

to reach Lancelot Drive from RTP. (See doc. no. 21, pp. 2, 4-7). Defendant argues that, if the rationale underlying Sgt. Brewer's statement in the affidavit were accepted, a driver could be said to be heading in the direction of virtually anywhere every time he or she pulled out of the driveway. (Id. at 2). Defendant asserts that Sgt. Brewer's statement was provided with reckless disregard for the truth and rendered invalid the necessary probable cause to support the search warrant. (Id.; doc. no. 9, p. 17).

Although the Court agrees with Defendant's assertion about the ambiguity in Sgt. Brewer's statement that the Camaro, which was merely seen pulling out of RTP following the controlled purchase and was later stopped in the area surrounding RTP, was observed heading to and coming from the direction of the residence, the Court disagrees with Defendant's argument that Sgt. Brewer's flawed statement was critical to the probable cause determination. Even assuming that this statement was made with reckless disregard for the truth, under Franks the warrant would only be invalidated where the removal of this flawed statement negated the finding of probable cause. 438 U.S. at 155-56. However, if this statement were excised from the affidavit, probable cause for the issuance of the search warrant still existed because a common sense review of the remaining information set forth in the affidavit, and described in detail above, showed a fair probability that contraband or evidence of a crime would be found at the residence.[7]

---

[7] Based upon the Court's conclusion that the warrant was supported by probable cause, the government's alternative position that the evidence recovered pursuant to the warrant should not be suppressed based upon the good faith exception need not be considered.

14

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the motion to suppress be **DENIED.**

SO REPORTED and RECOMMENDED this 10th day of May, 2007, at Augusta, Georgia.

*W. Leon Barfield* (signature)
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

# United States District Court
## Southern District of Georgia

UNITED STATES OF AMERICA    *

              vs.    *      CASE NO. 3:06-CR-16

BRONSON FLANDERS PHILLIPS    *
                                         *

The undersigned, a regularly appointed and qualified deputy in the office of this Clerk of this District, while conducting the business of the Court for said Division does hereby certify the following:

1. Pursuant to instructions from the court, and in the performance of my official duties, I personally placed in the U.S. Mail a sealed envelope bearing the lawful frank of the Court, and properly addressed to each of the persons, parties or attorneys listed below; and

2. That the aforementioned envelope(s) contain a copy of the documents known as Rpt & Recomm dated 5/10/07, which is part of the official records of this case.

Date of Mailing: 5/10/07
Date of Certificate: 5/10/07

                                                 SCOTT L. POFF, CLERK

                                                 By: *L. Flanders* (signature)

NAME:
1. Bronson Flanders Phillips
2. Althea Buafo
3.
4.
5.
6.
7.

Cert/Copy
- ☐ ☐ District Judge
- ☐ ☒ Magistrate Judge
- ☐ ☐ Minutes
- ☐ ☐ U.S. Probation
- ☐ ☐ U.S. Marshal
- ☐ ☒ U.S. Attorney
- ☐ ☐ JAG Office

Cert/Copy
- ☐ ☐ Dept. of Justice
- ☐ ☐ Dept. of Public Safety
- ☐ ☐ Voter Registrar
- ☐ ☐ U.S. Court of Appeals
- ☐ ☐ Nicole/Debbie
- ☐ ☐ Ray Stalvey
- ☐ ☐ Cindy Reynolds