FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2011 JUN 29 PM 1:57

CLERK _L. Flanders_
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

BRONSON FLANDERS PHILLIPS, )
)
Petitioner, )
)
v. )   CV 310-072
)   (Formerly CR 306-016)
UNITED STATES OF AMERICA, )
)
Respondent. )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Bronson Flanders Phillips, an inmate presently confined at the Federal

Prison Camp in Montgomery, Alabama, has filed with this Court a motion to vacate, set

aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The matter is now before the

Court on Petitioner's motion for a subpoena (doc. no. 2) and Respondent's motion to dismiss

Petitioner's § 2255 motion (doc. no. 5). Each party has filed a response in opposition to the

other party's motion. (Doc. nos. 6, 8.) For the reasons explained herein, the Court

**REPORTS** and **RECOMMENDS** that Petitioner's motion for a subpoena be **DENIED**

(doc. no. 2) and that Respondent's motion to dismiss be **GRANTED** (doc. no. 5).

Accordingly, the Court **RECOMMENDS** that the instant § 2255 motion be **DISMISSED**,

that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of

Respondent.

## I.     BACKGROUND

On April 11, 2007, a federal grand jury indicted Petitioner on one count of

distribution of cocaine and one count of possession with intent to distribute cocaine in

violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(B). See United States v. Phillips, CR 306-016, doc. no. 1 (S.D. Ga. Sept. 15, 2006) (hereinafter "CR 306-016"). Petitioner retained attorney Althea L. Buafo to represent him. Id., doc. no. 12. During the pre-trial portion of his case, Petitioner filed a motion to suppress, which was denied in an Order issued by the Honorable Dudley H. Bowen, Jr., United States District Judge, adopting a Report and Recommendation issued by the undersigned. See id., doc. nos. 17, 24, 28. On the eve of Petitioner's scheduled jury trial, he entered into a negotiated plea agreement, pursuant to which he agreed to plead guilty to count one of the indictment in exchange for the government's agreement to dismiss count two and not to object to a recommendation for a two-level reduction in offense level for acceptance of responsibility. Id., doc. no. 38.

On June 18, 2007, Judge Bowen held a Rule 11 hearing. Id., doc. no. 56. In response to Judge Bowen's initial questioning, Petitioner testified that he was 46 years old and that he had earned an associate's degree in business administration. Id. at 3. He further testified that he had served for two years in the United States Navy and had later worked as an aircraft mechanic. Id. at 3-4. He indicated that he had not had any drugs, medicines, pills, or alcohol during the 24-hour period preceding the hearing. Id. at 3. Judge Bowen asked Ms. Buafo if, during the course of her meetings and conferences with Petitioner, she had discovered any reason to doubt his competence. Id. at 4. Ms. Buafo responded that she had no reason at all to doubt his competence. Id. Following this initial questioning, Judge Bowen stated:

> I have no reason to doubt [Petitioner's] competence. He appears to be lucid in every respect that I can observe. He is attentive to the proceeding and while he may be a little nervous, which is typical under the circumstances, I find him competent to enter a plea if that is what he wants to do.

Id.

Petitioner also testified at the Rule 11 hearing that he was satisfied with Ms. Buafo's

2

handling and preparation of his case. Id. Petitioner informed Judge Bowen that he had gone over the indictment with Ms. Buafo several times and that he had no question at all about what the government would have to prove to convict him on the charge to which was pleading guilty. Id. Judge Bowen then proceeded to address the maximum statutory penalty that might be imposed in the event of Petitioner's conviction. Id. When asked if he understood the charge and the maximum penalty that might be imposed – a prison term of not less than five years and not more than forty years, not more than a $2,000,000 fine, at least four years of supervised release, and a $100 special assessment – Petitioner responded, "Yes, sir." Id. at 5-6.

Next, Judge Bowen informed Petitioner of his right to proceed with a jury trial, as well as the other rights to which he would be entitled if he chose to plead not guilty and proceed with his trial. Id. at 6-9. Petitioner testified that he understood these rights and that his decision to plead guilty would result in a waiver of these rights. Id. Furthermore, Petitioner verified that no one had forced, threatened, or pressured him into pleading guilty. Id. at 9. Judge Bowen then proceeded to summarize the substance of Petitioner's plea agreement, following which Petitioner indicated that Judge Bowen's summary of the terms of his plea agreement was consistent with his understanding of the agreement. Id. at 9-12. Petitioner stated that, aside from the plea agreement, no one had given him any other deal, promise, or hope of benefit to get him to plead guilty, and that no one had offered any prediction, prophecy, or guarantee as the sentence that would ultimately be imposed following his guilty plea. Id. at 11.

Judge Bowen then heard testimony from an officer with the Laurens County Sheriff's Department regarding the factual basis for the distribution of cocaine charge to which

3

Petitioner was pleading guilty. Id. at 12-18. Petitioner expressed his agreement with the officer's testimony, admitted that he was guilty as charged in count one of the indictment, and stated his desire to enter a guilty plea to that charge. Id. at 18-19. At that point, Judge Bowen accepted Petitioner's guilty plea. Id. at 19.

The Probation Officer then prepared a Presentence Investigation Report ("PSI"). Based on the quantity and nature of the drugs involved, Petitioner was assigned a base offense level of 30 pursuant to U.S.S.G. § 2D1.1(c)(4). (PSI ¶ 16.) In calculating Petitioner's total offense level, the Probation Officer determined that Petitioner was not entitled to a reduction for acceptance of responsibility. (PSI ¶¶ 14, 22.) The Probation Officer explained in the PSI that he met with Petitioner immediately following the Rule 11 hearing on June 18, 2007. (PSI ¶ 14.) At that meeting, Petitioner indicated that he had not engaged in the conduct that formed the basis of the charge to which he had pled guilty; in particular, he told the Probation Officer that he was not involved in a cocaine transaction on the date in question and that he was in fact innocent of the charge in count one of the indictment. (Id.) The Probation Officer reported that Petitioner's prior convictions placed him in a criminal history category of V, and calculated Petitioner's recommended range under the sentencing guidelines to be 151 to 188 months. (PSI ¶¶ 38, 65.)

The Probation Officer also detailed Petitioner's history of mental health issues. (See PSI ¶¶ 49-57.) The PSI indicates that Petitioner was diagnosed with schizophrenia in 1981 while serving in the U.S. Navy. (PSI ¶ 49.) He was again diagnosed with schizophrenia during various admissions to Veterans Administration ("VA") medical centers between 1982 and 1987; a history of cocaine abuse was also noted during this time. (PSI ¶¶ 56-57.) He was again admitted to a VA medical center in 1991, at which point his diagnosis was

4

changed to "Malingering, Personality Disorder, Antisocial, and History of Schizophrenia, in remission." (PSI ¶ 56.) Petitioner was admitted to VA facilities several more times between 1999 and 2003; his records from this time period reflect his previous history of schizophrenia. (Id.)

The Probation Officer further noted that Petitioner had undergone psychiatric evaluations in connection with state criminal proceedings on two previous occasions. The first of these evaluations was ordered in 1991 to determine if Petitioner was competent to stand trial on a cocaine possession charge (PSI ¶ 50.) The examining physician found that Petitioner "was competent to stand trial and understood the charges against him, was aware of the consequences, and was able to communicate with an attorney so as to participate in his own defense." (Id.)

The second evaluation was ordered in 2005 by the Honorable J. Stanley Smith, Laurens County Superior Court Judge, to determine Petitioner's competency to stand trial and "degree of criminal responsibility" following his arrest for the conduct that eventually formed the basis of the charges in CR 306-016. (PSI ¶ 51.) Petitioner's evaluation was conducted by Dr. Jennifer Gordon at Central State Hospital in Milledgeville, Georgia. (Id.) In her report, Dr. Gordon referenced Petitioner's history of mental illness and drug abuse as documented in his VA treatment records and records from prior admissions at Central State Hospital. (PSI ¶ 52.) Dr. Gordon reported that Petitioner presented as "uncooperative," "demanding," and "controlling," and noted that he "eagerly volunteered that he is 'hallucinating' and hears voices constantly 'second by second . . . all the time." (PSI ¶ 53.) Dr. Gordon also documented that Petitioner "eagerly claimed" he frequently experienced visual hallucinations and that he claimed to be hallucinating during the evaluation. (Id.)

Dr. Gordon found that Petitioner's claimed symptoms were not consistent with genuine mental illness, noting that visual hallucinations "are quite rare in genuine cases of psychosis" and that, contrary to his claims of hallucinating during the interview, he "never appeared to be responding to internal stimuli." (Id.) Dr. Gordon concluded that Petitioner was making a "deliberate attempt[] . . . to present himself as mentally ill and incompetent." (Id.) Additionally, as part of the evaluation, Dr. Gordon administered the Miller Forensic Assessment of Symptoms test, "a screening instrument developed to provide a quantitative estimate regarding the probability that an individual is feigning or exaggerating symptoms of mental illness." (PSI ¶ 54.) A score of six or greater on the test "is suggestive of malingering"; Petitioner scored nine. (Id.) Dr. Gordon summarized her findings as follows:

> Although Mr. Phillips carries a diagnosis of Schizophrenia within the VA system for which he apparently receives financial benefits as a disabled veteran, he grossly malingered memory impairment and psychological symptoms during this evaluation. His history, presentation, and self-report are not consistent with a symptom cluster or pattern characteristic of Schizophrenia or any other genuine major mental illness.

(Id.) Dr. Gordon concluded that Petitioner was competent to stand trial. (Id.) David Walker, M.D., the Clinical Director of the Forensic Services Division of Central State Hospital, similarly opined that Petitioner was competent to stand trial and criminally responsible in a letter dated August 4, 2005, sent in response to Judge Smith's request for evaluation. (PSI ¶ 51.)

Ms. Buafo filed an objection to the PSI, arguing that Petitioner should receive a three-level reduction in his offense level for acceptance of responsibility because, notwithstanding his statements to the Probation Officer, he pled guilty to the charge in count one of the indictment and admitted his guilt under oath during the Rule 11 hearing. (PSI, addendum.)

6

Petitioner further contended that the Probation Officer "tricked" him into claiming that he was innocent during the interview that took place after the Rule 11 hearing. (Id.)

Illness prevented Ms. Buafo from attending Petitioner's sentencing hearing. See CR 306-016, doc. no. 59, pp. 3-4. Accordingly, attorney Franklin J. Hogue filed a notice of appearance and represented Petitioner at the sentencing hearing. Id., doc. nos. 41, 59. Following a continuance requested by Mr. Hogue, Petitioner's sentencing hearing was held on July 17, 2008. Id., doc. no. 48. At the sentencing hearing, Judge Bowen asked Petitioner if he had read and discussed the PSI with his lawyer, and Petitioner indicated that he had. Id., doc. no. 59, p. 4. Judge Bowen afforded Mr. Hogue an opportunity to address the objection to the PSI. Mr. Hogue pointed to Petitioner's "significant mental health history," and asserted that, through "misunderstanding or misperception," Petitioner felt that he had been tricked into proclaiming his innocence during his interview with the Probation Officer following the Rule 11 hearing. Id. at 4-5. Mr. Hogue argued that Petitioner therefore had no intent to deny his guilt, and that, contrary to the recommendation in the PSI, he should be granted a reduction in his total offense level for acceptance of responsibility. Id.

The Court additionally heard from the Assistant United States Attorney who had led the prosecution, as well as the Probation Officer, who indicated that he had conducted Petitioner's interview in a routine fashion and had employed no deceptive tactics to cause Petitioner to renege on his earlier profession of guilt. Id. at 9-10. Petitioner also testified. In the midst of a lengthy statement consisting primarily of an exposition of his personal history and religious beliefs, see id. at 11-26, Petitioner addressed the objection to the PSI. Petitioner testified that he had lied to the Probation Officer during the interview following

7

his Rule 11 hearing and that, during the interview, he was under stress and was upset because, in his view, his arrest had been in violation of his constitutional rights and his case had been taken to federal court because he was black. Id. at 24. He also stated he "ignorantly assumed that [his] acceptance of responsibility was secured when [he] pled guilty to the charges." Id. at 25.

Judge Bowen overruled Petitioner's objection to the PSI, reasoning that Petitioner had made a false statement about a material matter that contradicted his testimony at the Rule 11 hearing. Id. at 29. Judge Bowen proceeded to adopt the factual statements of the PSI as his own findings of fact; he therefore confirmed that Petitioner's total offense level was 30 and his criminal history category was V, making his Guidelines range 151 to 188 months. Id. at 29-30. Judge Bowen sentenced Petitioner at the bottom of the Guidelines range, imposing a 151-month term of imprisonment and a fine of $151,000. Id. at 36-37.

Petitioner filed a direct appeal, in which he argued that his motion to suppress had been erroneously denied and that the fine imposed was excessive. See United States v. Phillips, 327 F. App'x 855, 857 (11th Cir. 2009) (per curiam). The Eleventh Circuit rejected his arguments and affirmed his conviction on June 10, 2009. Id. at 857-60. Petitioner reports that Ms. Buafo died of cancer on October 20, 2009. (See doc. nos. 3-1, 3-27.)

Petitioner then proceeded to file the instant § 2255 motion, in which he asserts the following claims for relief:

    (1)    Ineffective assistance of counsel based on:

        (a)    Ms. Buafo representing him despite her extreme physical illness, which Petitioner asserts resulted in constitutionally deficient representation at trial and on appeal;

(b)    Mr. Hogue's purportedly inadequate preparation for and
representation at the sentencing hearing; and

(c)    failure on the part of both attorneys to investigate Petitioner's mental
health issues and their consequent failure to move for a mental health
examination or introduce mitigating evidence at sentencing.

(2)    The entry of a guilty plea that was not knowing and voluntary.

(3)    The District Court's failure to order a mental health evaluation and
competency hearing *sua sponte* upon receiving the information regarding
Petitioner's mental health history in the PSI.

(Doc. no. 1, pp. 4-12.; see also doc. no. 3-27, p. 5.) Respondent contends that Petitioner's

trial counsel did not render ineffective assistance, that Petitioner's guilty plea was valid, and

that the Court did not err in failing to order a mental health evaluation upon learning of his

mental health history. (See generally doc. no. 5.) The Court resolves the matter as follows.

## II.    DISCUSSION

### A.    Petitioner Is Not Entitled to Relief on His Ineffective Assistance of Counsel Claims

As noted above, Petitioner argues that he received ineffective assistance of counsel

because of Ms. Buafo's illness, Mr. Hogue's inadequate preparation for his sentencing

hearing, and both attorneys' failure to investigate his mental health issues and to take further

appropriate steps to address such issues, such as moving for a mental health examination or

introducing additional mitigating evidence at sentencing. (See doc. no. 1, pp. 4-12.)

These claims of ineffective assistance of counsel are all related. Petitioner asserts

that Ms. Buafo's illness prevented her from giving adequate attention to his case, resulting

in her absence during his interview with the Probation Officer and his sentencing hearing,

and forcing Petitioner to rely on inadequately prepared replacement counsel, Mr. Hogue,

during the sentencing hearing. (Id.; doc. no. 3-27, pp. 16, 35.) According to Petitioner, his attorneys did not read or file a response to the PSI. (Doc. no. 3-27, p. 41.) Petitioner further alleges that, as a result of her illness, Ms. Buafo only consulted with him twice and did not investigate his medical history adequately. (Doc. no. 37, pp. 28-30, 35.) Petitioner points to Ms. Buafo's failure to uncover the VA's documentation of his 27-year history of mental health issues or his requests to prison officials to see a psychiatrist as indicative of her inadequate investigation into his medical history. (Id. at 35-36, 40.) He also observes that Ms. Buafo failed to consult with his sister regarding his condition. (See id.; see also doc. no. 3-1 (statement by Petitioner's sister that she paid Ms. Buafo for her representation and that Ms. Buafo did not consult with her about Petitioner's medical condition).) Furthermore, Petitioner asserts that the work on his appeal was done not by Ms. Buafo, but by one of her associates, Bernadette Crucilla, as evidenced in several letters sent by Ms. Crucilla to Petitioner during the pendency of his appeal. (Doc. no. 3-27, pp. 37-38; see also doc. no. 3-3 (copies Ms. Crucilla's letters to Petitioner).) The government addresses each of these alleged deficiencies in its response and contends that Petitioner received constitutionally adequate assistance of counsel. (See generally doc. no. 5.)

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1994), which is not a favorable standard to Petitioner. Massaro v. United States, 538 U.S. 500, 505 (2003). First, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In applying this test, reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional

assistance[.]" Id.; see also Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing "that petitioner was not entitled to error-free representation"). "A petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Second, Petitioner must establish prejudice by showing "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. In the context of a guilty plea, the Court must normally inquire as to whether counsel's performance affected the outcome of the plea process. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

In applying the Strickland components outlined above, "[a] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Smith v. Wainwright, 777 F.2d 609, 616 (11th Cir. 1985). Under the prejudice component, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome . . . ." Id. at 616 (citing Strickland, 466 U.S. at 694-95). For as the Eleventh Circuit has ruled, an affirmative showing of prejudice that would undermine the results of the proceedings is necessary because "'attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding

11

is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations omitted).

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). As the Eleventh Circuit has succinctly stated, "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*). "[C]ases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Id. at 1511.[1]

Turning its attention to the instant petition, the Court finds that Petitioner's allegations are insufficient to establish that either of his attorneys provided ineffective assistance. Assuming the truth of Petitioner's allegation that Ms. Buafo was suffering from a serious terminal illness during Petitioner's criminal proceedings,[2] none of the alleged consequences of her illness amount to constitutionally inadequate performance. Petitioner

---

[1]Notably, ineffective assistance of counsel claims may be raised for the first time in collateral proceedings without being subject procedural default for not raising the claims on direct appeal. Massaro v. United States, 538 U.S. 500, 509 (2003).

[2]Petitioner's motion for a subpoena requests discovery of Ms. Buafo's medical records during the period that she represented Petitioner. (Doc. no. 2.) Notably, a party may pursue discovery in a § 2255 proceeding only upon authorization of the Court and for "good cause." Rule 6 of the Rules Governing Section 2255 Proceedings For the United States District Courts. For the purpose of adjudicating the instant motion to dismiss, the Court has presumed the truth of Petitioner's allegations regarding Ms. Buafo's health, yet has determined, as discussed below, that Petitioner is not entitled to relief on any of the claims set forth in his § 2255 motion. Accordingly, the Court finds that the discovery sought by Petitioner in his motion for a subpoena is unwarranted, and **RECOMMENDS** that the motion be **DENIED**.

was not without representation at any critical stage of his criminal case; the only instance in which Petitioner avers that he was without counsel was during the interview with the Probation Officer following the Rule 11 hearing. However, such interviews are not considered a "critical stage of the criminal proceedings," and the Sixth Amendment right to effective assistance of counsel therefore does not guarantee Petitioner the right to have counsel present during such an interview. See United States v. Washington, 11 F.3d 1510, 1517 (10th Cir. 1993) ("[T]he presentence interview is not a critical stage of the proceeding within the meaning of the Sixth Amendment."); United States v. Hicks, 948 F.2d 877, 885 (4th Cir. 1991) ("There is no such right (to counsel) at a routine presentence interview because the presentence interview is not a critical stage of the criminal proceedings."); United States v. Simpson, 904 F.2d 607, 611 (11th Cir. 1990) (refusing to address issue of right to counsel at presentence interview on merits because issue not first raised in district court, but acknowledging that other circuits considering issue have concluded that interview with probation officer is not a critical stage of criminal proceedings at which counsel is guaranteed by Sixth Amendment). It is well-settled that a defendant cannot be deprived of effective assistance of counsel where there is no constitutional right to counsel. Wainwright v. Torna, 455 U.S. 586, 587-88 (1982) (per curiam).

Petitioner also fails to validly allege any prejudice resulting from Ms. Buafo not attending his interview with the Probation Officer. Although he claims that he lost a reduction in total offense level by denying the conduct that led to his arrest and indictment during the interview, his statements to the Probation Officer are not attributable to Ms. Buafo's failure to attend the interview. Indeed, Petitioner stated that the statements were

untrue and that he made them because of frustration over the perceived unconstitutionality of his arrest and his belief that he had already secured the reduction for acceptance of responsibility. (See doc. no. 59, pp. 24-27.) Thus, although Petitioner's statements during the interview affected him adversely at sentencing, there is nothing that suggests prejudice attributable to Ms. Buafo's failure to attend his interview with the Probation Officer.

Petitioner also misses the mark with his assertion that he was provided ineffective assistance of counsel because Ms. Buafo was unable to attend his sentencing hearing and arranged instead for Mr. Hogue to represent him at the hearing. When asked by Judge Bowen during the sentencing hearing whether he had read the PSI and discussed it with his lawyer, he replied that he had.[3] CR 306-016, doc. no. 59, p. 4. Judge Bowen recognized Petitioner's "right of allocution" at the hearing, and allowed him to speak at length, without interruption or limitation as to the matters to be addressed; yet Petitioner raised no objection regarding Ms. Buafo's absence or Mr. Hogue's representation at the hearing. See id. at 11-26.

While Petitioner now claims that did not consent to Mr. Hogue's representation and that Mr. Hogue was inadequately prepared, he has identified no deficiency in Mr. Hogue's performance while representing him at his sentencing hearing. Petitioner's allegation that his attorneys failed to produce evidence of mitigating evidence in the form of his history of mental health issues is insufficient in this regard. As explained in more detail below, neither attorney provided ineffective assistance by failing to investigate Petitioner's mental health

---

[3]Petitioner's contention that his attorneys did not read or respond to the PSI (see doc. no. 3-27, p. 41) is plainly without merit in light of this statement by Petitioner that he discussed the PSI with his counsel, along with the fact that Ms. Buafo filed a response objecting to the PSI. (See PSI, addendum.)

issues. Moreover, Mr. Hogue referenced Petitioner's "significant mental health history" in his presentation during the hearing, contradicting Petitioner's contention that Mr. Hogue failed to argue for a more lenient sentence based on the existence of such issues. See id. at 4.

Additionally, Petitioner cannot be said to have suffered any prejudice at sentencing resulting from his attorneys' failure to investigate or present evidence of his history of mental health issues because such issues were covered in detail in the PSI, the factual statements of which Judge Bowen adopted as his own findings of fact. (See id. at 29; PSI ¶¶ 49-57.) Further suggesting that Petitioner suffered no prejudice based on the representation he received at sentencing is the fact that he was sentenced at the very bottom of his advisory range under the Sentencing Guidelines, which severely undermines Petitioner's contention that additional mitigating evidence might have somehow resulted in a more favorable sentence. Therefore, the Court finds that Petitioner is not entitled to relief for ineffective assistance of counsel based on his allegations regarding Ms. Buafo's absence from his sentencing hearing and Mr. Hogue's representation at that hearing.

Petitioner is similarly not entitled to relief on his claim of ineffective assistance based on his attorneys' failure to investigate his mental health issues. In evaluating claims of ineffective assistance of counsel premised on an alleged failure to investigate particular issues or defenses, including those related to the defendant's mental health, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Williams v. Head, 185 F.3d 1223, 1236 (11th Cir. 1999) (quoting Strickland, 466 U.S. at 691). "[T]he

15

reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Bertolotti v. Dugger, 883 F.2d 1503, 1512 (11th Cir. 1989) (quoting Strickland, 466 U.S. at 691)). Thus, the presence or absence of information that should signal mental health issues is highly relevant, and counsel's performance will not be held constitutionally ineffective for failure to investigate matters not brought to her attention or otherwise apparent from the totality of the circumstances. See Bertolotti, 883 F.2d at 1515-16 (finding that, despite awareness of some facts indicating mental health issues, counsel made reasonable decision not to hire mental health expert, pursue mental health-based defenses to government's charges, or present evidence of psychological problems at sentencing); Funchess v. Wainwright, 772 F.2d 683, 689 (11th Cir. 1985) (finding no ineffective assistance for failure to investigate and present evidence of "extreme mental and emotional disturbance" where defendant never told counsel of any past psychological problems and there was nothing in recent evaluations "to cause [counsel] to even suspect that [defendant] might have a past history of psychological problems" ); cf. Williams, 185 F.3d at 1237 ("An attorney does not render ineffective assistance by failing to discover [evidence] that his client does not mention to him.").

Here, Petitioner repeatedly emphasizes his long history of mental health issues, but he sets forth no allegation indicating that either of his attorneys were given any indication of such issues prior to the issuance of the PSI. According to Petitioner, "In the two meetings between Ms. Buafo and Mr. Phillips, his mental history and mental conditions were never discussed." (Doc. no. 3-27, p. 28.) Moreover, Petitioner alleges that his sister hired Ms. Buafo to represent him and paid for the representation, but he does not allege that his sister

16

told his attorneys about his mental health history. (Id. at 8; doc. no. 3-3.) Petitioner argues that his attorneys should have inferred that he was mentally ill based on his denial of guilt during the interview with the Probation Officer following the Rule 11 hearing, or based on his receipt of disability benefits. (Doc. no. 3-27, pp. 8, 25.) However, these occurrences are not particularly suggestive of mental health issues, and do not constitute a sufficient basis to conclude that Petitioner's attorneys provided constitutionally inadequate representation by not investigating further.[4] Cf. Bertolotti, 883 F.2d at 1513, 1515-16 (rejecting ineffective assistance claim based on failure to adequately investigate and present evidence of psychological problems where, inter alia, tapes of defendant's confession revealed extremely emotional state, defendant had been placed under psychiatric observation while being held for the murder, and defendant's girlfriend told his counsel she believed he needed psychiatric help and had a "split personality"). In other words, Petitioner's allegations of his attorneys' failure to investigate his mental health issues do not entitle him to relief because, notwithstanding his long history of psychological problems, he fails to set forth facts that would establish that his attorneys had notice of these issues such that they should have investigated further.[5] Funchess, 772 F.2d at 689 (emphasizing defendant's failure to provide

---

[4]Indeed, Petitioner provided reasons for these facts that gave no indication of mental health issues. He testified that his statements during the interview with the Probation Officer were motivated by frustration over his purportedly improper arrest and his mistaken belief that receiving a reduction for acceptance of responsibility was not in jeopardy; likewise, he stated that he received disability benefits for "medical" reasons, without indicating that the medical reasons were psychological in nature. CR 306-016, doc. no. 59, pp. 13, 24-25, 27.

[5]According to the facts set forth in the petition, the information in the PSI was the first substantial indication of Petitioner's mental health issues received by Petitioner's attorneys. Notably, however, the PSI also showed that Petitioner had recently been found competent in connection with the arrest that gave rise to criminal proceedings in CR 306-016 and had been noted to be an extreme malingerer with respect to his alleged psychological

counsel with any indication of past psychological problems and lack of information that would lead counsel to suspect the existence of such problems).

Furthermore, Petitioner has not adequately alleged that he was prejudiced by his attorneys' failure to investigate his history of mental health problems. This is not a situation in which Petitioner's history of mental illness escaped the sentencing court's notice. Rather, as noted above, Petitioner's mental health issues received extensive treatment in the PSI, and were therefore brought to Judge Bowen's attention prior to sentencing. Furthermore, a thorough investigation by Petitioner's attorneys earlier in the case would have revealed what eventually came to light in the PSI: that in two previous psychological evaluations, one of which was performed in conjunction with the arrest that led to the charges in the criminal proceedings at issue here, Petitioner was found competent to stand trial. (PSI ¶¶ 50-54.) Moreover, the most recent evaluation indicated that Petitioner severely malingered psychological problems in an attempt to appear legally incompetent. Id. It is thus apparent that a more thorough investigation by Petitioner's attorneys would not have led to information that would have been substantially likely to produce a different result. Accordingly, Petitioner's allegations fail to show prejudice from his attorneys' failure to investigate his mental health history and to take other steps, such as securing an additional mental health evaluation. See Bertolotti, 883 F.2d at 1516-20 (finding no prejudice where evidence of psychological evidence was equivocal and in substantial conflict with other, equally credible evidence).

---

symptoms. (See PSI ¶¶ 49-57.) Thus, even upon receipt of the information in the PSI, it was reasonable for Petitioner's attorneys not to investigate further or seek a competency determination.

Finally, Petitioner's assertion that Ms. Buafo's associate, Ms. Crucilla, did all or the majority of the work on his appeal does not entitle him to relief on his claim of ineffective assistance of counsel. There is nothing unusual about an attorney delegating matters to an associate, and Petitioner has not identified any deficiency in the prosecution of his appeal or any type of prejudice resulting from the work done on his appeal.

In sum, the facts set forth in the instant petition fail to satisfy the requirements for entitlement to relief on Petitioner's claims of ineffective assistance of counsel. Accordingly, Respondent's motion to dismiss should be granted as to these claims.

**B.     Petitioner's Guilty Plea Was Knowing and Voluntary**

Though Petitioner does not set forth an independent claim challenging the voluntariness of his guilty plea, he appears to argue in his amended brief in support of his § 2255 motion that his guilty plea was not knowing and voluntary because of his history of mental illness. (Doc. no. 3-27, p. 35.) Giving a liberal construction to Petitioner's pleadings, the Court will address this claim as though it had been set forth as an independent ground for relief in the instant § 2255 motion.

The Eleventh Circuit has described the requirements for a valid guilty plea as follows:

"The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights." A plea of guilty "cannot support a judgment of guilt unless it was voluntary in a constitutional sense." Aside from the obvious involuntariness of a coerced plea, the Supreme Court has identified two other ways that a defendant's guilty plea may be involuntary in a constitutional sense:

A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving, or because he has such an incomplete understanding of the charge that his plea cannot

19

> stand as an intelligent admission of guilt. Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this latter sense.
>
> As the Supreme Court has plainly instructed, the voluntariness requirement is not satisfied unless the defendant receives real notice of the true nature of the charged crime: "[C]learly the plea could not be voluntary in the sense that it constituted an intelligent admission that he committed the offense unless the defendant received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'"

United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997) (internal citations omitted). The Eleventh Circuit has further explained that, for a guilty plea to be made knowingly and voluntarily, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005). In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error, he would not have entered the plea." Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

As the government persuasively argues, the extensive plea colloquy conducted by Judge Bowen at the Rule 11 hearing addresses each of the aforementioned "core principles." Moriarty, 429 F.3d at 1019. In response to Judge Bowen's questioning at the Rule 11 hearing, Petitioner testified that he had gone over the indictment with Ms. Buafo several times and that he had no question at all about what the government would have to prove to convict him on the charge to which was pleading guilty. CR 306-016, doc. no. 56, pp. 4-5. Judge Bowen informed Petitioner in clear terms of the maximum statutory penalty that might

be imposed in the event of Petitioner's conviction, and Petitioner testified that he understood the charge and the maximum penalty that might be imposed. Id. at 5-6. Addressing the consequences of his guilty plea, Judge Bowen provided a detailed explanation of the rights that Petitioner would forfeit by pleading guilty; Petitioner stated that he understood these rights and that his decision to plead guilty would result in a waiver of these rights. Id. at 6-9. In addition, Petitioner stated that no one had forced or pressured him into pleading guilty; he further stated that, aside from the plea agreement, no one had given him any deal, promise, or hope of benefit to get him to plead guilty, and that no one had offered any prediction, prophecy, or guarantee as the sentence that would ultimately be imposed following his guilty plea. Id. at 9, 11.

In short, Judge Bowen's thorough plea colloquy ensured that Petitioner's guilty plea was free from coercion and that Petitioner understood both the nature of the charge to which he was pleading guilty and the consequences of his plea. See Moriarty, 429 F.3d at 1019. The basis for Petitioner's challenge to the voluntariness of his plea is that he has a long history of mental health issues. Because the record is clear as to the intelligent and voluntary entry of Petitioner's guilty plea, his assertion of a history of mental health problems is insufficient to show that his plea was not knowing and voluntary. Furthermore, Petitioner has not alleged, much less shown a reasonable probability of, the existence of any error without which he would have persisted in his plea of not guilty. See Moriarty, 429 F.3d at 1020 (rejecting challenge to entry of guilty plea where defendant did not attempt to carry his burden of showing that, but for some error, he would not have entered his guilty plea). Therefore, Petitioner is not entitled to relief on his claim that his guilty plea was not knowing

and voluntary.

## C.  The District Court Did Not Err by Failing to Order a Psychological Evaluation or Competency Hearing

Petitioner also seeks relief based on the District Court's failure to order a mental health evaluation and competency hearing *sua sponte* upon receiving the information regarding Petitioner's mental health history in the PSI. (Doc. no. 1, p. 9.)

"A defendant is mentally incompetent to stand trial when he is 'suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.'" United States v. Cunningham, 194 F. App'x 582, 584 (11th Cir. 2006) (*per curiam*) (citing 18 U.S.C. § 4241(a)). "A district court must conduct a competency hearing when there is a 'bona fide doubt' regarding the defendant's competence." United States v. Rahim, 431 F.3d 753, 759 (11th Cir. 2005) (citing Pate v. Robinson, 383 U.S. 375, 385 (1966)). Notably, "[n]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges." Medina v. Singletary, 59 F.3d 1095, 1106 (11th Cir. 1995). Moreover, "the petitioner bears the burden of showing that 'objective facts known to the trial court were sufficient to raise a bona fide doubt.'" Id. (quoting Reese v. Wainwright, 600 F.2d 1085, 1091 (5th Cir. 1979)).

Here, Petitioner has failed to show that he is entitled to relief on his competency claim. As discussed above, the evidence presented is equivocal: the evidence of Petitioner's previous history of mental health issues was accompanied by recent reports indicating that Petitioner was not at the time suffering from any form of psychosis, that he appreciated the

22

wrongfulness of his conduct, that he had a tendency to malinger symptoms of psychological illness, and that he was competent to stand trial. (See PSI ¶¶ 49-57.) The evidence does not strongly suggest Petitioner was suffering from the effects of mental illness during the relevant time period, and Petitioner's extensive testimony at both the Rule 11 and sentencing hearings provided no indication that he was unable to understand the charges brought against him or was unable assist counsel with his representation. See Medina, 59 F.3d at 1106 (noting the relevancy of prior medical opinions on a defendant's competency to stand trial and the defendant's demeanor during court proceedings). Accordingly, the Court finds that the evidence before the District Court was insufficient to give rise to a 'bona fide doubt' regarding Petitioner's competence. Petitioner is therefore not entitled to relief on his claim that the District Court should have ordered a psychological examination or conducted a competency hearing upon reviewing the information in the PSI.

## III.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Petitioner's motion for a subpoena (doc. no. 2) be **DENIED** and that Respondent's motion to dismiss (doc. no. 5) be **GRANTED**. The Court further **RECOMMENDS** that the instant § 2255 motion be **DISMISSED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED on this 29-th day of June, 2011, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

23